Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 5186 | **DATE** | 10/12/2012 |
| **CASE TITLE** | Sherelle Adams vs. Cook County | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this order, the Court finds that there is no genuine issue of material fact as to the claims plaintiff asserts against defendant, which is entitled to judgment as a matter of law. Accordingly, the Court grants defendant's motion for summary judgment [18] and terminates this case.

■[ For further details see text below.]        Docketing to mail notices.

## STATEMENT

Plaintiff alleges that Cook County[1] fired her because of her race (Count I) and in retaliation for her complaints of discrimination (Count II) in violation of Title VII. Defendant has filed a Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment, which the Court grants.

**Facts**

Near the end of 2001, the County Clerk's Office hired plaintiff to work as a clerk in the elections department. (Pl.'s Ex. 1, Adams Dep. at 6-9.) Shortly before the end of plaintiff's probationary period, Human Resources Director Tricia Treater fired her for excessive tardiness. (*Id.* at 12-13.) Though plaintiff admits that she was late "once or twice a week" during her probationary period, she nonetheless complained about the termination to a friend, who was a ward superintendent, and was re-hired. (*Id.* at 14-17.) When she returned to work, she was transferred from the elections department to vital statistics. (*Id.* at 9-10, 17-18.)

Sometime in 2001, plaintiff says that Treater accused her of "sleeping with coworkers in an attempt to gain promotions" and told plaintiff that Treater had "white spies around the office to inform her of whatever plaintiff did at work." (*Id.* at 70.) Plaintiff told her union president, Christine Boardman, and the County Clerk, David Orr, about Treater's comments. (*Id.* at 70-73.) She also told Orr that Treater disciplined black women more harshly than white women, and told the director and deputy director of vital statistics, Gerry Weston and Tim Dever, that Treater did not like black women. (*Id.* at 73, 92-95.)

In 2004, Treater again terminated plaintiff's employment, purportedly for her alteration of a doctor's note she submitted for FMLA leave. (*Id.* at 79-80.) Plaintiff apparently filed a grievance over the termination because in April 2004, she was given a letter "related to a termination grievance" that allowed her to return to work. (*Id.* at 49.)

Plaintiff was sporadically disciplined for unexcused absences or tardiness from the end of 2004 through mid-2007, but she apparently had no disciplinary problems in 2008 or 2009. (*Id.* at 51-64.)

In June 2010, however, plaintiff's supervisors found discrepancies between the number of marriage license applications she issued and the amount of money she collected. (*Id.* at 98-112.) Plaintiff admitted that she forgot to collect the application fee from one customer but otherwise denied that she had done anything improper. (*Id.* at 113-37.) She attributed any discrepancies in her work to the office computer system, which she said had not worked properly since it was installed in 2008. (*Id.* at 128-31.) After conducting a hearing on the issue, Treater terminated plaintiff for theft. (*Id.* at 98-108.)

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Plaintiff can survive summary judgment on her discrimination claim by using: (1) the direct method of proof, *i.e.*, offering evidence of suspicious timing or ambiguous comments that suggest bias, showing that defendant gave "systematically better treatment" to similarly situated, non-African American employees or was replaced by a non-African American employee for incredible reasons; (2) or the indirect method proof, *i.e.*, showing that defendant terminated her, though she was meeting its legitimate performance expectations, but not a similarly-situated non-African-American employee, and gave an incredible reason for doing so. *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719-21 (7th Cir. 2005) (quotation omitted). The record does not contain evidence that satisfies either approach.

With respect to discrimination, plaintiff testified that Treater: (1) did not reprimand or terminate Harriet, a white woman "much older" than plaintiff, for her accounting errors;[2] (2) told plaintiff in 2001 that she had "white spies" watching plaintiff and that "we," which plaintiff took to mean African-American women, were not going to "run rampant over the job"; and (3) disciplined African-American women more harshly than white women. (Pl.'s Ex. 1, Adams Dep. at 70, 73-74, 83-88, 163-64.) She also testified, however, that Treater gave Harriet "a break" because "she [was] old," did not treat African-American men differently than white men and did not make any arguably racist comment at any time after 2001. (*Id.* at 73-74, 83-88, 171.) Moreover, plaintiff offers nothing more than speculation to support her claim of unequal discipline, admits that her cash drawer was short, in part, because she "forgot" to collect the marriage license fee from one applicant and said she could not explain the other discrepancies defendant found in her accounting. (*Id.* at 121-22, 140, 163; *see id.* at 73 ("[W]e just talked among ourselves and we observed. And I as well as a lot of my coworkers were under the impression that Tricia Treater was prejudiced."); *id.* at 85-86 ("[W]e all knew that [Treater] was prejudice[d]. We . . . saw the way that she treated the African-American women . . . . as opposed to the Caucasian females that had attendance problems . . . . I surely wasn't the only one.").) In short, viewed favorably to plaintiff, the record contains no evidence from which a reasonable jury could infer that defendant terminated plaintiff because of her race.

The same is true for plaintiff's retaliation claim. To defeat defendant's motion on this claim, plaintiff must offer evidence that suggests she was terminated because she engaged in protected activity or that she was terminated after she engaged in protected activity and no similarly situated employee who did not engage in such activity suffered the same fate. *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004). Viewed

| STATEMENT |
|---|
| favorably to plaintiff, the record suggests that, in 2001, she complained to her union president, the County Clerk and her supervisors in vital statistics that Treater was prejudiced against black women. (Pl.'s Ex. 1, Adams Dep. at 70-73, 92-97.) There is no evidence, however, to suggest that these complaints played any role in Treater's decision to terminate plaintiff in 2010 or that defendant retained a similarly situated employee who had not complained of discrimination. Thus, plaintiff has not created a triable issue of fact as to whether her termination was the product of retaliation. |

1. Plaintiff also names Cook County Clerk David Orr, in his official capacity, as a defendant. Because suing a government official in his official capacity is the same as suing the entity that employs him, the Court dismisses Orr from this suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

2. Plaintiff also asserts that defendant did not terminate Jackie Banaszak, a white woman, whose cash drawer was found to be $40.00 short but admits that she does not know whether that money was ultimately recovered or accounted for. (*See id.* at 73, 171-73.)